IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | **FINDING OF PROBABLE CAUSE** |
| ) | **AND ORDER OF DETENTION** |
| v. ) | Case No.: 1:20mj00084-001 |
| ) | |
| **COLE CARINI,** ) | |
| Defendant ) | |

Pursuant to Federal Rule of Criminal Procedure Rule 5.1, the defendant was brought before the court on June 17, 2020, for a preliminary hearing on charges that he has violated 18 U.S.C. § 1001(a)(2) for making a false statement in a matter within the jurisdiction of the United States. Based on the evidence presented, including that contained in the Criminal Complaint and presented at the hearing, I find that probable cause exists to show that the defendant has committed the alleged offense.

In accordance with the Bail Reform Act, 18 U.S.C. § 3142, a detention hearing also was held in this matter on June 17, 2020. Based on the evidence presented, including, but not limited to, the following, I find that the clear and convincing evidence shows that the defendant presents a danger to the community or others if released pending trial:

1. In 2016, the defendant was charged and pleaded no contest to state court charges of the possession/use/manufacture/transport of a firebomb after he was discovered attempting to make pipe bombs. These charges were dismissed in 2019 after the defendant successfully completed a two-year period of pretrial supervision;

2. The defendant has a history of serious mental illness, including being involuntarily committed to a psychiatric hospital for a seven-day stay at the age of 14. According to the defendant, he currently suffers from depression, obsessive compulsive disorder and autism for which he was being treated by a psychiatrist prior to his arrest; the defendant's psychiatrist had prescribed Prozac and Adderall for him;

3. The defendant suffered serious injury to both of his hands on June 2, 2020. The injuries resulted in the amputation of one of his hands and the loss of all but one finger on the other hand;

4. The defendant told medical and law enforcement personnel that he injured his hands in a lawn mower accident. He subsequently has admitted to his mother that his hands were injured in an explosion;

5. A search of the defendant's bedroom in his mother's residence revealed evidence that the defendant's hands had been injured in an explosion that had occurred in the room. The bedroom window was shattered and the blinds on the window were damaged as if from exploding shrapnel. The walls of the room also were damaged, and blood was found on the floor, walls and ceiling. Law enforcement offers also found a substantial amount of explosive material, including as much as three pounds of triacetone triperoxide, ("TATP"), a highly volatile material, and ammonia nitrate, various parts that could be used to manufacture an improvised explosive device and writings detailing how to convert a pressure cooker into an improvised explosive device. Law enforcement officers also found a pressure cooker that had been modified to create an improvised explosive device, complete with a packet of small metal objects attached to it. The pressure cooker contained a white powdered

      substance, which tested positive for containing explosives. Officers also found numerous writings containing formulas for explosives and detailing the testing of various explosives and improvised explosive devices. Officers also found writing in which the defendant wrote of killing himself and a female named Jamie, but contained no specific plan to do so;

6. Federal Bureau of Investigation Special Agent Micah Childers, a FBI-certified bomb technician, testified that a gram of TATP could produce an explosion that would be fatal to a person. Childers said that the amount of TATP recovered from the defendant's bedroom could have destroyed most of the residence, if it had exploded;

7. Karen Carini, the defendant's mother testified that she was willing to accept third-party custody of the defendant, if he were released on bond, but she admitted that she was not aware that the defendant had possessed explosives and used those explosives to build at least one improvised explosive device while living in her home. The court further finds that Karen Carini was less than forthcoming in much of her testimony with court. In particular, Karen Carini, at first, testified that she believed that her son had injured his hands in a mowing accident. After further questioning, she admitted to hearing a "pop" before the defendant appeared asking for help for his injuries. She eventually admitted that the defendant had told her that his hands were injured in an explosion; and

8. According to the defendant, he has a girlfriend named Jamie Keene, but he was unable to provide any contact information for his girlfriend.

**Directions Regarding Detention**

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility pending his revocation hearing. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with any further court proceedings.

**ENTERED:**     June 18, 2020.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE